UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELIA SMITH and | § | |
| KELVIN SMITH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  3:12-CV-2465-B |
| | § | |
| CVS CAREMARK CORP., *et al.,* | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION & ORDER

Before the Court is a Motion for Summary Judgment (doc. 38) filed by Defendants on April

2, 2013 and a Motion for Summary Judgment (doc. 42) filed by Plaintiffs on April 5, 2013. For the

reasons that follow, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiffs' Motion.

I.

BACKGROUND

This action is brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 *et*

*seq. Pro se* Plaintiffs Angelia Smith and Kelvin Smith are suing Angelia's former employer, Defendant

Caremark, L.L.C., as well a number of allegedly related entities, Defendants CVS Caremark

Corporation, Caremark RX, L.L.C., Caremark PhC, L.L.C., CVS Pharmacy, Inc., CVS Rx Services,

Inc., Jane Dick c/o CVS Caremark Corp., and Donna Randle c/o CVS Caremark Corp., for

interference, discrimination, and retaliation against Angelia when she sought to care for her husband

Kelvin, in violation of the FMLA.

The following contains a brief, summary recitation of the undisputed, material facts: Angelia

- 1 -

was employed by Caremark, L.L.C. as a customer service representative at the customer call center

in Richardson, Texas from 2002 to 2010. At some point during her employment, there was a merger

between the CVS and Caremark entities. Angelia had received FMLA leave off-and-on beginning

in 2003 for reasons undisclosed to the Court. In April 2009, Angelia requested FMLA leave for

maternity leave. Defendants[1] approved Angelia's leave through June 24, 2009. Doc. 39, Br. at 6. In

November 2009, Angelia again requested intermittent FMLA leave to care for her husband Kelvin

due to an illness. On December 16, 2009, she provided Defendants with a medical certification from

Kelvin's physician. *Id.* On December 24, 2009, Defendants granted Angelia's intermittent leave

request retroactively to November 15, 2009 through May 15, 2010. *Id.* On April 13, 2010,

Defendants requested additional certification from Kelvin's physician to cover the amount of

intermittent leave Angelia was taking, though Plaintiffs dispute that such an additional certification

was necessary. *Id.* Nonetheless, on April 28, 2010, Angelia sent the requested new medical

certification. *Id.* On May 12, 2010, Defendants approved and extended Angelia's intermittent leave

through November 15, 2010. *Id.* In total, Angelia was granted FMLA leave for some time between

April and June 2009 and intermittent leave from November 15, 2009 until November 15, 2010. Doc.

32, Am. Compl. at 6, 8. Each of Angelia's requests for leave under the FMLA were ultimately

granted in full.

The following facts presented by Defendants are disputed by Plaintiffs: Defendants explain

---

[1]Defendants suggest that Caremark, L.L.C. is the only proper Defendant in this case because only it was Angelia's employer. Doc. 39, Br. at 1 n.1. The Court refers to the actions taken by "Defendants," generally, for simplicity and because the Court has not been presented with legal argument as to which defendants are properly joined to this suit. Such a question need not be determined, however, given that the Court bases its decision to grant summary judgment to all of the Defendants on other grounds.

that from May through June 2010, Angelia's supervisor, Donna Randle, received several complaints against Angelia from supervisors and quality control representatives stating that Angelia had been rude to employees and customers and that she had failed to log out of her phone multiple times, which caused numerous customers' calls to go unanswered for hours. Doc. 39, Br. at 7. Plaintiff had allegedly received several prior formal warnings throughout her years of employment with Defendants related to similar behavior. *Id*. at 2, 4-5. Defendants allege that, in light of these recurring problems, Defendant Randle and two other managers decided to terminate Angelia's employment. *Id*. at 7. Angelia was terminated on June 22, 2010. *Id*. Angelia alleges that she was terminated because of her FMLA leave. Doc. 32, Am. Compl. at 6.

On June 22, 2012, two years after Angelia's termination, Plaintiffs filed an Original Petition in state Court against several of the Defendants. Doc. 1-3, Original Pet. Defendants removed the action to federal court on July 20, 2012. Doc. 1, Notice. The Court ultimately granted in part Plaintiffs' request to amend their pleadings, and the Amended Complaint (doc. 32), filed on February 22, 2013, operates as the live pleading in this case.

On April 2, 2013, Defendants filed a Motion for Summary Judgment (doc. 38), seeking judgment on each of Plaintiffs' claims. Plaintiffs filed a cross Motion for Summary Judgment (doc. 42) on April 5, 2013, which also appears to serve as a Response to Defendants' Motion.[2] Both parties

---

[2]The Court recognizes that Plaintiffs' Motion for Summary Judgment was electronically filed three days after the Court's deadline for filing dispositive motions without explanation from Plaintiffs as to why the Court should accept their untimely Motion. Nonetheless, given Plaintiffs' *pro se* status and the short delay, the Court decides in its discretion to permit the untimely filing. The Court notes, however, that from page 22 (the second of two page 22s) of Plaintiffs' summary judgment motion onward, the brief is essentially a reprint of the first half, albeit with several relatively minor additions and omissions. In this Order, the Court will cite primarily to the first half of the brief rather than repeating its citations to the second half, but the Court notes that it is considering the entire brief, including the additions in the second half, in making its determinations.

oppose the other party's Motion. Neither party filed replies to the responses within the deadlines for

doing so, so the Motions are now ripe for review. This Court has original jurisdiction pursuant to 28

U.S.C. § 1331.

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine

dispute as to a specific fact essential to the other side's case to demand at least one sworn averment

of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." The substantive law governing a matter

determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

The summary judgment movant bears the burden of proving that no genuine issue of material

fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the

non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not

support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the

mere absence of evidence supporting the non-movant's case. *Id.*

Once the summary judgment movant has met this burden, the non-movant must "go beyond

the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding

the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

Plaintiffs and Defendants filed cross-motions for summary judgment on each of Plaintiffs' claims, and each opposes the other's Motion.[3] The Court evaluates the claims and arguments, in turn, below.

A.    *Plaintiff Kelvin Smith's Standing*

Defendants contend that Plaintiff Kelvin Smith does not have standing to pursue an FMLA claim against Defendants because Kelvin was never an employee of any of the Defendants nor had any relationship to Angelia's FMLA claims, other than being the beneficiary of her support. Doc. 38,

---

[3]The Court advises that Plaintiffs' summary judgment motion, briefing, and appendix were procedurally deficient under a number of Local Rules, prohibitively disorganized, and, at times, incoherent. However, due to the *pro se* status of Plaintiffs, the Court has liberally construed their pleadings and briefing and has undertaken a significant review of the summary judgment evidence and argument to ensure that the issues in this case are resolved on the merits and not by procedural default.

Mot. at 8-9. The Court agrees that neither Plaintiffs' pleadings nor their briefing demonstrates that Kelvin enjoyed an employee-employer relationship with any of the Defendants or was otherwise involved in Angelia's claims. Indeed, Kelvin admitted that he is not an employee of CVS Caremark. Doc. 40, App. at 90-91 (Resp. to Request for Admissions). The causes of action raised in the Amended Complaint are each based on the employment relationship under the FMLA, so the Court agrees that Kelvin lacks standing to sue. *See* 29 U.S.C. §§ 2611(2), 2617 (defining an eligible employee under the FMLA and describing civil actions available under the FMLA by "employees" and the Secretary); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372-74 (5th Cir. 2008) (declining to award a spouse standing to sue for retaliation based on his wife's FMLA requests). Accordingly, the Court **GRANTS** summary judgment to Defendants on Kelvin's claims.

B.    *FMLA Interference Claim*

The Amended Complaint appears to raise a claim for FMLA interference. Under 29 U.S.C. § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). Once the right to the benefit is established, the employee is due the benefit, regardless of the intent of the employer. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). In order to establish a *prima facie* case of interference under the FMLA, an employee must show (1) she was an eligible employee under the FMLA; (2) the employer was subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the employer of her intent to take FMLA leave; and (5) she was denied an entitlement under the FMLA, or the employer failed to respect the employee's FMLA entitlements. *See Holland v. Shinseki*, No. 3:10-CV-908-B, 2012 U.S. Dist. LEXIS 6788, at *37-38 (N.D. Tex. Jan. 18, 2012). Under the fifth element of the prima facie test, an employee must prove

both that the employer interfered with, restrained, or denied her exercise of FMLA rights, and also that the employee was prejudiced by such violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation . . . .").[4]

Liberally construing the Amended Complaint, Plaintiffs assert that Defendants interfered with Angelia's entitlements under the FMLA in the following respects: Defendants required Plaintiffs to provide a second medical certification from Kelvin's physician even though Angelia's leave was previously approved; Defendants' corporate policy and practice was to predetermine that certain medical conditions were automatically unworthy of FMLA leave; Defendants circulated "rumors" that Angelia was not approved under FMLA and would be terminated due to her absences if she did not provide medical support for her need to take FMLA leave; Defendants hurt Angelia's ability to find other employment once she was terminated; and Defendants hindered Angelia's ability to collect unemployment insurance post-termination. Doc. 32, Am. Compl. at 11-12; doc. 42, Mot. at 9-10.

Plaintiffs' primary argument appears to be that, in April 2010, Defendants required her to provide new medical certification to support her intermittent leave, despite the fact that Angelia was

---

[4]Several circuits have held that the *McDonnell Douglas* burden-shifting framework does not apply to interference claims under the FMLA, *see Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005), but the Sixth Circuit holds that it does. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). This Court follows the majority of courts and holds that *McDonnell Douglas* does not apply to FMLA interference claims, particularly given that employer motive plays no role in such claims. *See Brock-Chapman v. Nat'l Care Network, L.L.C.*, 3:10-CV-454-B, 2013 WL 169177, at *4 (N.D. Tex. Jan. 16, 2013); *Aiman Abdulbaki v. Regent Care Ctr. of San Antonio II*, No. SA-11-CV-211-OLG(NN), 2012 U.S. Dist. LEXIS 43827, at *39 n.151 (W.D. Tex. Mar. 29, 2012).

already granted intermittent leave through May 15, 2010. Plaintiffs argue that when Defendants required this new certification, they "denied" the leave that had previously been granted to Angelia. Doc. 42, Mot. at 2-3. Even if Plaintiffs' characterization of the request for re-certification as a "denial" is correct, upon receiving the re-certification, Defendants validated the prior leave *and extended it* an additional six months through November 15, 2010. Plaintiffs themselves do not dispute that Angelia's request was granted in full once she submitted the new medical certification, and their own evidence and argument provides that Angelia's leave *was granted* from November 15, 2009 through November 15, 2010. Doc. 32, Am. Compl. at 6, 8 (explaining that leave "was approved from 11/15/2009-11/15/2010"); doc. 42, Br. at 4, 6 (same); doc. 41, App. at PageID 754, 765-69, 808[5] (letters of approval for leave). Plaintiffs do submit an email of November 28, 2009 from a Leave of Absence Supervisor at CVS Caremark which stated that Angelia's prior Spring 2009 request for FMLA leave (maternity leave) was denied. Doc. 41, App. at PageID 640. However, both parties agree that the language in the email was a misstatement in that Angelia was granted leave from the end of April through June 2009. Doc. 45, Br. at 5-6. The parties do not dispute that May 2009 FMLA leave request was granted, so there is no material dispute of fact despite the email language to the contrary. Because Plaintiffs admit that all of Angelia's FMLA requests were ultimately granted, Plaintiffs cannot demonstrate that Angelia was denied an entitlement under the FMLA. *See Ragsdale*, 535 U.S. at 89. Without any allegations that she was prejudiced, Plaintiffs' interference claim fails. *Id.*

---

[5]Plaintiffs' method of citing to their Appendix is inconsistent, and the appendix does not contain consecutive page numbers. Accordingly, the Court will cite to the Page ID number, inserted by the electronic docket within the top ticker, to refer to pin cites in Plaintiffs' Appendix.

Next, Plaintiffs argue that Defendants have a corporate-wide policy or practice of automatically denying FMLA claims related to certain medical conditions without reviewing medical certification. Doc. 42, Mot. at 1-4. However, even if such a policy or practice existed, Plaintiffs cannot show the policy or practice prejudiced Angelia, since Plaintiffs admit and bring no evidence to dispute that the FMLA requests were ultimately granted in full and that Angelia received all of her requested FMLA entitlements. Plaintiffs' other alleged ways in which Defendants interfered with Angelia's FMLA rights also fail as a matter of law. Angelia does not explain how the alleged "rumors" regarding her FMLA leave hindered her ability to take leave or otherwise exercise her FMLA rights.[6] Further, the problems Angelia purportedly faced in seeking new employment and collecting insurance benefits appear to post-date her termination and do not appear to have any connection to her FMLA leave.

The Court concludes that there is no genuine issue of fact, and as a matter of law Plaintiffs cannot show that Defendants interfered with Angelia's FMLA rights or entitlements. Accordingly, the Court **GRANTS** summary judgment to Defendants on the FMLA interference claim and **DENIES** summary judgment to Plaintiffs.

C.     *FMLA Retaliation Claim*

Plaintiffs' Amended Complaint also appears to state a claim for retaliation under the FMLA. Plaintiffs allege that they have direct evidence of discriminatory intent, but given that they have presented no such direct evidence, the Court determines that this is an indirect evidence case.

---

[6]The only support Plaintiffs provide regarding the rumors that Angelia would be terminated if her leave was not approved is Defendants' original and amended answer, which contain no evidence of such rumors.

Therefore, the Court must apply the familiar *McDonnell Douglas* burden-shifting framework to claims of retaliation under the FMLA. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Powers v. Woodlands Religious Cmty., Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). Under this framework, the employee must first meet her burden of establishing a *prima facie* case of retaliation. *Hunt*, 277 F.3d at 768. If the employee succeeds in making a *prima facie* case, the burden of production (though not persuasion) shifts to the employer to "articulate a legitimate, nondiscriminatory or non-retaliatory reason" for its action. *Id.* If the employer does this, the burden swings back to the employee to produce evidence sufficient to support a finding by the preponderance of the evidence that the employer's reason for its conduct is a pretext for retaliation. *Id.*; *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

1.      Prima Facie Case

To make a *prima facie* case of retaliation under the FMLA, the employee must present evidence that "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *See Hunt*, 277 F.3d at 768. Defendants assert that Plaintiffs cannot establish a *prima facie* case of FMLA retaliation because Angelia cannot show that she was treated less favorably than an employee who had not requested FMLA leave or that she was terminated in part because she took FMLA leave. The Court agrees with Defendants in that Plaintiffs' summary judgment briefing fails to bring any evidence whatsoever or create a dispute of fact that Angelia was treated differently than an employee who had not requested FMLA leave or that she was terminated in part due to FMLA leave. It is

possible that Plaintiffs are asserting adverse employment actions other than Angelia's termination in support of their FMLA retaliation claim. Plaintiffs' briefing alleges that Angelia was not promoted in retaliation for taking FMLA leave. Doc. 42, Mot. at 4-5. However, Plaintiffs cite no evidence whatsoever to support this theory. Additionally, to the extent that Plaintiffs believe that Defendants' request that they submit new certification to support the previously-granted intermittent leave was an adverse action, *see id.* at 5, the Court concludes that requesting a new medical certification does not constitute an "adverse employment action" necessary for an FMLA retaliation claim, especially where the FMLA leave was granted. The utter lack of evidence in support of Plaintiffs' FMLA retaliation claim is fatal to Plaintiffs' motion for summary judgment and opposition to Defendants' motion.

2.    Legitimate, Non-discriminatory Reason for Termination

Even if the Court decided that Plaintiffs had met their *prima facie* burden, which is admittedly low, the burden of production would shift to Defendants to offer a legitimate, non-discriminatory reason for Angelia's termination. Defendants submit summary judgment evidence in the form of a Corrective Action Report (doc. 40, App. at 82-84), a Coaching Opportunity email (*Id.* at 86), an email regarding a call taken by Angelia (*id.* at 88), and the Declaration of Angelia's supervisor Randle (*id.* at 2-4). *See* doc. 39, Br. at 7, 13. According to Defendants, the summary judgment evidence shows that Angelia was cited for two primary performance issues: inappropriate communications with customers and co-workers and for failing to log out of her phone, which caused customer calls to go unanswered for hours. *Id.* at 13. Randle's declaration explains these matters, doc. 40, App. at 2-4, and the termination form explains that Angelia was terminated for: failing to log out of her phone on June 16, 2010 (after receiving warnings about this issue in prior years), which caused

thirty-nine customer calls to go unanswered; for failing to appropriately assist customers on June 7 and 14 of 2010; and for being abrasive to another employee on May 19, 2010. *Id.* at 82-83. The emails discuss the allegedly negative phone calls. *Id.* at 86, 88. The Court concludes that Defendants have met their burden of producing evidence that they had a legitimate, non-discriminatory reason to terminate Angelia, namely, that she had performance problems.

    3.    <u>Pretext</u>

The next step under the *McDonnell Douglas* burden-shifting framework asks whether there is evidence that Defendants' purported non-discriminatory reason for terminating Angelia was pretext for a discriminatory motive. Unfortunately, Plaintiffs' summary judgment briefing fails to distinguish between any of their arguments and primarily provides a recitation of their pleadings. In addition to failing to include legal argument directly related to pretext, Plaintiffs completely fail to raise evidence or a dispute of fact showing that they are entitled to summary judgment on their Motion and/or that Defendants are not entitled to summary judgment on their Motion related to pretext on the FMLA retaliation claim. When Plaintiffs do cite to evidence in the record, it is often mislabeled to the point where the Court is unable to determine to what the citation actually applies. Moreover, the primary piece of evidence Plaintiffs rely upon in their summary judgment briefing is Defendants' Original Answer, which not only is not the operative answer in this case, but also does not support any of Plaintiffs' arguments. The Court is not required to sift through the record to find evidence to support Plaintiffs' claims and responses. *See Ragas*, 136 F.3d at 458. As explained above, the purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan*, 497 U.S. at 888-89. In this case,

Defendants have demanded that Plaintiffs provide at least one sworn averment that its allegations of Angelia's poor performance are false or a pretext. Plaintiffs have failed to do so. Indeed, Plaintiffs apparently refused to submit themselves for depositions despite being properly noticed, though Defendants did not previously raise this issue in Court in seeking to avoid additional expense. Doc. 39, Br. at 8 n.4. Further, Plaintiffs do not submit any affidavits, other than four signature pages, averring the truth of any of the allegations in their briefing and pleadings.

Although the Court need not address the issue further, the Court will explain its specific determinations that evidence of pretext is absent, below.

        *i.*      *False reasons for termination*

Plaintiffs claim that the allegations that Angelia left her phone unattended or failed to log out are false. Doc. 42, Mot. at 14. Plaintiffs also claim that Angelia had excellent performance reviews and had not been validly disciplined for speaking inappropriately with customers or co-workers. *See, e.g.*, doc. 42, Mot. at 13. However, Plaintiffs do not cite any evidence–not even an affidavit or deposition testimony from Angelia herself–supporting these statements.

        *ii.*      *Supervisor behavior*

Plaintiffs also allege that Angelia was given a different supervisor, Defendant Randle, because her prior supervisor, D'Evelyn Bartie, was helpful in obtaining FMLA leave and the management preferred that Angelia have a more difficult supervisor. *See, e.g.*, doc. 42, Mot. at 5-6. Plaintiffs do not support these allegations with evidence. Plaintiffs do provide an email from Zsa-zsa Brown, a customer care supervisor, to Randle noting that Brown overheard Angelia being rude on the phone and requesting that Randle listen to the call. Doc. 42, Mot. at 17. The email states: "I would prefer you to act like you just chose the call randomly." Doc. 41, App. at PageID 656. Angelia alleges that

this evidence shows that Defendants were "[f]ishing for a reason to terminate due to my FMLA leave." Doc. 42, Mot. at 17. However, the Court concludes that the contents of this email are simply insufficient to infer any evidence of pretext that Angelia's termination was due to FMLA leave instead of poor conduct or performance.

iii.    *Request for re-certification of leave*

Plaintiffs contend that the request for re-certification is evidence that the FMLA leave was a reason for her termination, *see, e.g.*, doc. 42, Mot. at 7-9, but do not provide any valid theory linking the two or evidence in support, which is especially necessary since leave was not only reinforced but extended an additional six months following the re-certification. Plaintiffs allege that a supervisor and the Human Resources Department forced Angelia to prove her FMLA leave or threatened to terminate her, *see* doc. 42, Mot. at 5, 11-13 but provide no evidence in support.

iv.    *Corporate policy and practice*

Liberally construing Plaintiffs' pleadings, they could also be alleging that the aforementioned inconsistent and unlawful corporate policies and practices evidence pretext. *See, e.g.*, doc. 42, Mot. at 1-2, 17. The only evidence of Defendants' policies is outlined in Defendants' Appendix, doc. 40, App. at 15-17, which pertains to employee standards and not FMLA leave.

v.    *Rumors*

Plaintiffs have discussed the issue of rumors circulating (though it is not clear when or where such rumors were circulated) that Angelia's FMLA leave was not approved and that any unexcused absences would lead to Angelia's termination. *See, e.g.*, doc. 42, Mot. at 9-10, 13. Again, Plaintiffs point to Defendants' original answer, which is not the operative pleading, as evidence of the "rumors" that Angelia had no FMLA leave, but the Court can find no such evidence or admission

in that document.

        *vi.*      *Post-termination problems*

Plaintiffs also mention problems allegedly caused by Defendants as Angelia attempted to find other employment and collect unemployment insurance. *See, e.g.*, doc. 42, Mot. at 10, 13. Plaintiffs point the Court to a "Settlement letter Governed by Texas Rules of Evidence 408 (see Exhibit C)," as evidence that Defendants made it difficult for Plaintiff to obtain other employment and interfered with her ability to collect unemployment insurance. Despite the fact that these allegations do not appear to relate to the FMLA leave, the Court has reviewed Plaintiffs' Appendix and cannot find a "settlement" letter within it. Moreover, Exhibit C to the Appendix merely contains Defendants' original and amended pleadings. *See* doc. 41, App. at PageID 720-41.

        *vii.*     *Disparate treatment*

Plaintiffs state that Angelia was treated differently from other employees due to her FMLA leave, doc. 42, Mot. at 10, but do not allege any examples of this and, again, present no evidence. Plaintiffs also allege that Angelia was under-compensated, *id.* at 6-7, but do not argue that her compensation was related to her FMLA leave, let alone provide evidence in support of disparate treatment in this regard.

        *viii.*    *Temporal proximity*

Plaintiffs allege that there was a temporal proximity between the time when she was taking FMLA leave and her discharge. Doc. 42, Mot. at 11, 15. Defendants admit and the Court agrees that the summary judgment records contains evidence that Angelia was terminated while she was taking approved intermittent FMLA leave (though Defendant disclaims that temporal proximity exists). Although the Court concludes that there is temporal proximity, that alone is insufficient to

demonstrate pretext in cases such as this. *See Woodson v. Scott & White Mem'l Hosp.*, 255 F. App'x 17, 20 (5th Cir. 2007) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007)).

In sum, any arguments related to pretext that could be gleaned from Plaintiffs' summary judgment briefing are completely unsupported by evidence. Accordingly, the Court concludes that summary judgment is **GRANTED** to Defendants and **DENIED** to Plaintiffs on the FMLA retaliation claim, because there is no dispute of fact that Plaintiffs are unable to present a *prima facie* case of retaliation or show that Defendants' reason for terminating Angelia was pretext.

D.      *Title VII and Section 1981 Claims*

Defendants seek summary judgment on Plaintiffs' claims under Title VII and Section 1981, to the extent that Plaintiffs have alleged those claims. Doc. 39, Br. at 16-21. The Court, however, concludes that no such causes of action exist in the Amended Complaint. Although the Court and the parties should liberally construe *pro se* pleadings, such a liberal construction does not require that the Court or a defendant create causes of action where there are none.[7] The Court finds no reason to grant or deny summary judgment to Defendants under Title VII or Section 1981, because no such causes of action are raised in the Amended Complaint.

E.      *Miscellaneous*

Plaintiffs object to Defendants' summary judgment evidence as containing inadmissible hearsay. Doc. 42, Mot. at 16-17 (unnumbered page). As the Court does not rely on any alleged hearsay statements to support its decisions, the objection is **DENIED AS MOOT**.

---

[7]The Court has already found that any Title VII claim by Plaintiffs would be barred for failure to exhaust administrative remedies. *See* doc. 24, Order at 5; *see also doc.* 39, Br. at 16-17; *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997).

- 16 -

Plaintiffs also request that the Court issue an order certifying a class under Federal Rule of Civil Procedure 23(b)(1) and (2). *See* doc. 42, Mot. at 18. The Court **DENIES** the request as unsubstantiated and as nonconforming with the procedural rules.

Plaintiffs' Amended Complaint mentions "intentional infliction of emotional distress." Doc. 32, Compl. at 16-17. To the extent Plaintiffs sought to raise a cause of action under state law for intentional infliction of emotional distress, the pleadings fail to adequately allege such a cause of action. The Court *sua sponte* **DISMISSES** Plaintiffs' intentional infliction of emotional distress claim for failure to state a claim, to the extent one was brought.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (doc. 38), and **DENIES** Plaintiffs' Motion for Summary Judgment (doc. 42).

**SO ORDERED.**

**SIGNED: May 23, 2013.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE